JAMES G. TURNER, Appellant, *vs.* ADALINE LEE, Appellee.

*Opinion filed April 18, 1912.*

1. EVIDENCE—*adverse party may testify where deposition of a deceased person is read in evidence.* Under exception 5 of section 2 of the Evidence act an adverse party to a suit by or against the executor of a deceased person may, when the deposition of the deceased person is read in evidence, testify to all "matters and things" testified to in such deposition, not excluded for irrelevancy or incompetency.

2. DEEDS—*when deed will not be set aside.* A deed will not be set aside upon the ground that it was made in consideration of an agreement by the grantee to care for and support the grantor and that there has been a failure by the grantee to carry out such agreement, where the weight of the evidence shows that no such agreement was made but that the deed was made and delivered to the grantee because the grantor thought the grantee had not been treated fairly in the division of her step-father's estate.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

BEACH & TRAPP, for appellant.

BLINN & COVEY, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Logan county by Martha M. Turner to set aside a deed executed by her to her daughter, Adaline Lee, the appellee. Pending the litigation Mrs. Turner died, and her executor, the appellant, James G. Turner, was substituted as complainant. After the issues were joined evidence was taken before a master in chancery, and thereafter a decree was entered dismissing the bill for want of equity. From that decree this appeal has been prosecuted.

Martha M. Turner in 1908 was a widow eighty-eight years of age, living in Middleton, Logan county, Illinois, on

a fifty-foot lot owned by her in fee simple. At that time appellee, a daughter of Mrs. Turner by her first marriage, lived about seven blocks away. March 27, 1908, after several previous talks on the subject, Mrs. Turner asked Mrs. Lee to get Victor Ryan, cashier of a bank in Middleton, to come to the house and draw a deed of the property to Mrs. Lee. In response to the message Ryan came to the house and drafted an ordinary form of warranty deed conveying the property to Mrs. Lee, the consideration being stated as one dollar "and mutual love and affection." The deed, after being read over to her by Ryan, was executed by Mrs. Turner and acknowledged before him as a notary public. Mrs. Turner, whose deposition was taken after this litigation was started, testified that the understanding between her and her daughter was, that this deed was given in consideration that Mrs. Lee should take care of her as long as she (Mrs. Turner) lived; that it was not to be recorded but left in the bank at Middleton, so it could be delivered by Mrs. Turner before her death; that the reason for this arrangement was, so that if she (Mrs. Turner) had a chance to sell the property at a good price she could do so; that she supposed Ryan overheard the talk between herself and Mrs. Lee; that she had already drawn a will, and that the day the deed was executed, she thought, she gave both papers to Ryan and told him to keep them at the bank for her. Mrs. Lee testified positively that she made no promises to her mother as a consideration for the deed; that her mother stated that she was giving her the house and lot because in the division of Mrs. Lee's stepfather's property, she, (Mrs. Lee,) not being an own daughter of Turner, had not received anything, the property going to her half brothers; that she had some talk with her mother about letting her sell the property, if she wanted to, before the mother died, but thought this was after the deed was recorded and after this litigation started. Mrs. Lee testified positively that the deed was given to her in the pres-

ence of her mother by Ryan after it was executed, and she was told to take it home and keep it. Ryan testified that he drew the deed and that it was delivered to Mrs. Lee that day; that there was no talk in his presence with reference to the consideration other than that stated in the deed and there was nothing said as to Mrs. Lee taking care of her mother; that Mrs. Turner requested Mrs. Lee not to record the deed until after she died, as she did not want any trouble between her sons by her second husband and Mrs. Lee. Mrs. Lee's daughter-in-law, Mrs. Fern Lee, was with her mother and grandmother on that day shortly before the deed was executed and heard their conversation about getting Ryan to draw it. She said there was no talk at that time about Mrs. Lee taking care of Mrs. Turner as long as she lived; that Mrs. Turner stated in her presence that the deed was given to Mrs. Lee because the latter "had not got her rights from the farm." Mrs. Lee's son, Jefferson Lee, testified to somewhat similar facts. James G. Turner, the executor and sole legatee under the will executed in March, 1910, about two months before his mother's death, testified that he had always understood in the family talks that Mrs. Lee was to have the property in question if she stayed in Middleton and took care of her mother; that it was to be left her by will.

Mrs. Lee, at the time this deed was executed, was living in Middleton with her son, Jefferson Lee, and his wife. She was not in very good health, being subject to epileptic fits. She had frequently offered to go and live with her mother or have her mother come and live with her, but Mrs. Turner, who up to a short time before her death had always been in fair health, replied that she (Mrs. Turner) was better able to take care of herself than her daughter was. It appears that while they both lived in Middleton appellee or Mrs. Fern Lee used to go a part of every day to Mrs. Turner's house to see if there was anything she wanted. In May, 1908, after the deed had been executed, Mrs. Lee's

son, Jefferson Lee, decided to move to Lincoln, the county seat of Logan county. The matter was talked over with his mother and Mrs. Turner, and the testimony tends to show that Mrs. Turner told Mrs. Lee that she ought to move to Lincoln with her son; that she (Mrs. Lee) was not able to live alone and take care of herself. This was testified to by Mrs. Lee, and also by her son, her daughter-in-law and her half brother, William H. Turner. Mrs. Lee moved with her son to Lincoln and at about that time recorded the deed. A few months thereafter Mrs. Turner filed the bill in this cause. It appears, however, that Mrs. Lee visited Mrs. Turner at Middleton very frequently after moving to Lincoln, going down to help take care of her when sick, and was there for several weeks helping take care of her mother during her last illness.

It is clear from the evidence that Mrs. Turner was a woman of positive qualities and somewhat difficult to get along with; that she preferred living alone, and did not want to live with Mrs. Lee or have Mrs. Lee live with her. Appellant, James G. Turner, admits that she was a hard person to get along with, and would tell Mrs. Lee and her other children that she did not want them around. We think it is a fair inference from this record that she filed this bill because Mrs. Lee had recorded the deed and not because she moved to Lincoln. Mrs. Turner testified that if Mrs. Lee had left the deed as she told her, everything would have been all right. While there is testimony tending to show that there was some talk about Mrs. Lee helping to take care of her mother, we think the weight of the evidence upholds the contention of appellee that this was not the consideration for the deed and that it was delivered to Mrs. Lee the day it was executed.

Mrs. Turner's deposition was taken in this case before her death and introduced in evidence by appellant. Mrs. Lee testified after her mother's death. It is contended that much of her evidence was incompetent and objections were

made to various questions asked her. The first part of section 2 of the chapter on evidence in the Illinois statutes provides that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, * * * when any adverse party sues or defends as * * * the executor, administrator, heir, legatee or devisee of any deceased person, * * * unless when called as a witness by such adverse party so suing or defending," etc. The fifth exception to that general rule provides that "when, in any such action, suit or proceeding, the deposition of such deceased person shall be read in evidence at the trial, any adverse party or party in interest may testify as to all matters and things testified to in such deposition by such deceased person, and not excluded for irrelevancy or incompetency." It is contended by counsel for appellant that Mrs. Lee not only was permitted to testify to a conversation had the day the deed was executed, but to other conversations had with her mother with reference to the deed. Mrs. Turner testified, on direct and cross-examination, to more than one conversation, and her testimony touched the whole question of the consideration for the deed, its delivery, and her talks about the deed at various times with Mrs. Lee. Under the provisions of said paragraph 5 of section 2 we think all the testimony of Mrs. Lee was admissible as referring to the same "matters and things" testified to by Mrs. Turner in her deposition.

It is further contended by appellant that the testimony with reference to Mrs. Turner consenting that Mrs. Lee might move to Lincoln with her son was in the nature of a release of a contract as to the consideration of the deed, and not having been set up in Mrs. Lee's answer could not be heard as an affirmative defense. We do not find that this objection was made in the trial court. Whether it was or not and whether all this evidence on this question was admissible it is unnecessary to decide, as we have already

stated that by the weight of the evidence it appears that the consideration of the deed was not that Mrs. Lee should reside in Middleton and care for her mother until she died.

The decree of the circuit court will be affirmed.

*Decree affirmed.*